J-S35002-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RODRIGO MACEDO ARANA, | |
| Appellant | No. 134 MDA 2018 |

Appeal from the PCRA Order Entered December 18, 2017
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0000004-2011

BEFORE: BENDER, P.J.E., PANELLA, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 27, 2018**

Appellant, Rodrigo Macedo Arana, appeals from the post-conviction court's December 18, 2017 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

On July 21, 2011, a jury convicted Appellant of first-degree murder based on the following facts:

> On September 11, 201[0] into the early morning hours of September 12, 201[0,] Alfredo Uribe, Jr., Axel Charicata, Mario Ceballos and Julio Romero went to a "Sweet 15" birthday party. They met [Appellant] at the party.[1] Uribe, Ceballos, Romero, and [Appellant] then proceeded to a second "after party." The men left the "after party" and tried to purchase beer at a local bar. Romero remained in the silver Dodge Intrepid the group traveled

---

[1] The record states that Appellant was born in November of 1990, making him 19 years old in September of 2010.

in. [Appellant] and Ceballos entered the bar to try to purchase beer. Uribe waited outside the bar because he did not believe he would be permitted entry due to his youthful appearance. After a short time, Uribe returned to the vehicle where Romero was. The vehicle was approximately one block away from the bar. During the course of the evening, Uribe entered the vehicle and "found" and retrieved a firearm from under the front passenger seat. Uribe put the firearm in his waistband and stated he intended to keep the gun and planned to attempt to sell it at school. Upon further examination from the [trial court], Uribe was unsure of the exact point in the evening when he retrieved the firearm. Elsewhere, [Appellant] and Ceballos left the bar unable to [ob]tain beer. They then came in contact with the victim, [W.T.], aged fifteen (15), and two of his friends, [D.D.], aged fourteen (14)[,] and [A.R.], aged sixteen (16). An argument ensued between the two groups, although it is unclear which group spoke the first words. Ceballos testified that he saw the victim, [W.T.], "messing with his waist" and so he asked him "yo, what are you reaching for," believing he may have a firearm. Ceballos further testified that he went to check [the victim's] waist, [the victim] moved Ceballos'[s] hand, and Ceballos then hit the victim. [Appellant] and the victim engaged in a fist fight, with [Appellant] clearly winning the fist fight. At some point during the scuffle[,] Ceballos removed the victim's sneakers. [D.D.] and [A.R.] both testified that they ran before the fist fight began. Uribe further testified that after the fight had progressed and the victim was already down on the ground, and after he too had participated in hitting the victim, Uribe believed the victim to be reaching for his waistband again. Uribe removed the firearm from his waistband and [Appellant] grabbed the gun, firing eight (8) to nine (9) rounds into the victim. [Appellant], Uribe, Ceballos, and Romero then left the scene in Romero's vehicle.

*Commonwealth v. Arana*, No. 1688 MDA 2011, unpublished memorandum at 1-2 (Pa. Super. filed Dec. 21, 2012) (quoting Trial Court Opinion, 2/1/12, at 1-3) (citations omitted)).

On August 31, 2011, Appellant was sentenced to life imprisonment without the possibility of parole. He filed a timely direct appeal, and this Court affirmed. *See Arana, supra*. Our Supreme Court denied his subsequent

petition for allowance of appeal on July 16, 2013. ***Commonwealth v. Arana***, 69 A.3d 599 (Pa. 2013).

On March 6, 2014, Appellant filed a timely, *pro se* PCRA petition and counsel was appointed. After being granted several extensions of time, counsel filed an amended petition on Appellant's behalf on July 27, 2017. Therein, counsel raised three claims of ineffective assistance of Appellant's trial counsel. On October 23, 2017, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to deny Appellant's petition without a hearing. Appellant did not respond and, therefore, on December 18, 2017, the court filed an order denying his petition.

Appellant filed a timely notice of appeal, and he also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, he presents three questions for our review:

1. Did the PCRA [c]ourt err in not scheduling a hearing and not finding that trial counsel provided ineffective assistance of counsel when she interfered with Appellant's right to testify and when she gave specific advice so unreasonable as to prevent him from presenting his claim of mistaken belief self-defense consistent with [v]oluntary [m]anslaughter?

2. Did the PCRA [c]ourt err in not scheduling a hearing and not finding that trial counsel provided ineffective assistance of counsel when she interfered with Appellant's right to testify and when she gave specific advice so unreasonable as to prevent

him from presenting his claim of mistaken belief or self-defense consistent with [v]oluntary [m]anslaughter?[2]

    3. Did the PCRA [c]ourt err in not scheduling a hearing and not finding that trial counsel provided ineffective assistance of counsel when she failed to investigate and call witnesses even though she told the jury that she would provide character witnesses to testify about Appellant's reputation in the community for being peaceful or nonviolent, and produced only a single family member?

Appellant's Brief at 4.

We begin by recognizing that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or

---

[2] Appellant's first two issues are identical in his Statement of the Questions portion of his brief. However, in the argument section of his brief, Appellant alleges in his second issue that his trial counsel acted ineffectively by indicating in her opening statement that she would present certain evidence that she ultimately did not produce. **See** Appellant's Brief at 15-18. This argument aligns with the second issue preserved in Appellant's Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and discussed by the PCRA court in its opinion. **See** PCRA Court Opinion, 10/23/17, at 2, 3-4. Accordingly, while we could deem Appellant's second issue waived based on his failure to set it forth in his Statement of the Questions, we decline to do so, as that error does not impede our meaningful review of his argument.

innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

*Commonwealth v. Johnson*, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted). We also note that, "[t]here is no absolute right to an evidentiary hearing." *Commonwealth v. Burton*, 121 A.3d 1063, 1067 (Pa. Super. 2015) (*en banc*) (citation omitted). However, on appeal in a case such as Appellant's, where the PCRA court did not conduct a hearing, "we examine the issues raised in light of the record to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing." *Id.* (citation and internal quotation marks omitted).

Appellant first contends that his trial counsel was ineffective for advising him to waive his right to testify at trial. As our Supreme Court has explained,

[t]he decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

- 5 -

*Commonwealth v. Nieves*, 746 A.2d 1102, 1104 (Pa. 2000) (citations omitted).

Here, Appellant contends that his trial counsel interfered with his right to testify by not adequately consulting with him about that decision or fully explaining his case to him, including what defense theory counsel intended to pursue. Appellant claims that counsel could not have explained her defense strategy to him - and how his testifying would help or hinder that defense - where the record demonstrates that counsel was herself confused about what defense theory she was advocating. For instance, Appellant avers that at times counsel pursued a 'mistaken-belief' (or 'unreasonable belief') defense,[3] and at other points she argued that Appellant had a diminished capacity due to his consumption of alcohol on the night of the shooting.[4] Appellant also contends that counsel unreasonably advised him not to testify because "his testimony would not be helpful." Appellant's Brief at 13. Appellant maintains that there was no logical reason for counsel to advise him as such, and her

---

[3] *See* 18 Pa.C.S. § 2503(b) ("**Unreasonable belief killing justifiable.**--A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title (relating to general principles of justification), but his belief is unreasonable.").

[4] "A defense of diminished capacity, whether grounded in mental defect or voluntary intoxication, is an extremely limited defense available only to those defendants who admit criminal liability but contest the degree of culpability based upon an inability to formulate the specific intent to kill. … For a defendant who proves a diminished capacity defense, first-degree murder is mitigated to third-degree murder." *Commonwealth v. Hutchinson*, 25 A.3d 277, 312 (Pa. 2011) (citations omitted).

doing so prejudiced him, because there was no other evidence to support a mistaken-belief defense, which requires proof of his state of mind at the time of the shooting.

Appellant's claim lacks arguable merit. First, the record does not support his allegation that counsel did not sufficiently consult with him prior to his waiving his right to testify. Just before closing arguments, the court asked Appellant if he had decided whether he wanted to testify, and Appellant responded that he did not. N.T. Trial, 7/19/11-7/21/11, at 418. Counsel then informed the court that she and Appellant had "discussed at length the rights he gives up by not testifying, [and] the benefits … for him if he does not testify…." *Id.* Counsel stated that she "believe[d] [Appellant was] making a knowing, intelligent, [and] voluntary waiver of his right to take the stand in his own defense." *Id.* The court then informed Appellant that he could "[a]bsolutely" change his mind and take the stand if he desired. *Id.* at 419. Appellant again confirmed that he did not want to testify. *Id.* When asked if he had any questions, Appellant stated that he did not. *Id.* Additionally, when asked if he was "satisfied with the representation of [his] attorney[,]" Appellant answered that he was. *Id.*

Furthermore, the record belies Appellant's claim that his counsel could not have adequately advised him about testifying because she had not formed a clear defense strategy. Counsel argued throughout trial that Appellant could only be convicted of voluntary manslaughter under the mistaken-belief theory of section 2503(b). For instance, in counsel's opening statement, she

explained that Appellant had shot the victim under the mistaken belief that the victim was reaching for a gun. *See id.* at 50. There was evidence admitted during the Commonwealth's case-in-chief that supported this defense, namely Appellant's own statement to police that he shot the victim because he "saw [the victim] reaching for his hip[.]" *Id.* at 226, 392. Appellant's counsel repeatedly reiterated Appellant's mistaken-belief defense in closing arguments, *see id.* at 426, 428, 429, 432, and the trial court instructed the jury on that defense, *id.* at 467. While counsel did refer to Appellant's intoxication as diminishing his capacity to form the specific intent to kill, *see, e.g.*, *id.* at 422, counsel clearly centered her defense on contending that the jury could convict him only of voluntary manslaughter under a mistaken-belief defense. Therefore, the record belies Appellant's assertion that counsel lacked a focused defense strategy and could not have effectively advised him on the impact his testimony would have on that defense.

Finally, we address Appellant's claim that counsel advised him not to testify because his testimony would not be helpful. Appellant contends that counsel's advice was unreasonable because there was no evidence establishing his state of mind at the moment he shot the victim, which was necessary to support his mistaken-belief defense. However, in Appellant's confession to police, he stated that he shot the victim because he believed the victim was reaching for his hip. This evidence conveyed Appellant's state of mind at the moment of the shooting, supported his mistaken-belief defense,

and made it unnecessary for him to take the stand and expose himself to a potentially damaging cross-examination. Therefore, Appellant has not established that counsel's advice was "so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Nieves*, 746 A.2d at 1104.

In sum, we perceive no genuine issue of material fact regarding Appellant's first claim of ineffective assistance of counsel, premised on counsel's advising him not to testify. Therefore, the PCRA court did not err in denying that claim without a hearing.

In Appellant's second issue, he avers that counsel was ineffective for telling the jury, in her opening statement, that certain evidence would be presented to support Appellant's mistaken-belief defense, but then not producing that evidence. Specifically, Appellant claims that counsel promised the jury that several of the victim's friends would testify that they heard one of Appellant's companions ask the victim, "what do you have?" Appellant's Brief at 16. However, none of the victim's friends testified as such. In regard to how he was prejudiced by this purported error by counsel, Appellant confusingly states the following:

> In the end, the trial court provided a very brief mistaken belief charge; however, it did not instruct the jury on self-defense or diminished capacity. The trial court determined that: "Beyond the above instruction we do not believe that a self-defense [instruction] was warranted as the ground work was not laid throughout the trial." Trial Court … Opinion, 2/12/2012, p. 12. Accordingly, Appellant was prejudiced.

*Id.* at 17.

Appellant's prejudice argument is insufficient to demonstrate that counsel acted ineffectively. Appellant does not explain why, if the victim's friends had testified as counsel said they would (*i.e.*, that they heard Appellant's cohort ask the victim what he was reaching for), it would have prompted the court to give an instruction on self-defense or diminished capacity.[5] Indeed, this testimony would have only further supported the mistaken-belief defense, on which Appellant concedes the court instructed the jury. We also note that Appellant does not discuss why a self-defense instruction would have changed the outcome of his trial, given that it is clear the victim did not actually possess a firearm. Therefore, the PCRA court properly denied this claim of ineffectiveness without an evidentiary hearing.

In Appellant's third and final issue, he argues that his trial counsel was ineffective for failing to present character witnesses.

> [W]hen raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the [***Strickland v. Washington***, 466 U.S. 668 (1984),] test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial....
>
> ***Commonwealth v. Sneed***, 45 A.3d 1096, 1108–09 (Pa. 2012). "To demonstrate ***Strickland*** prejudice, a petitioner must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Sneed***, 45 A.3d at 1109.

---

[5] Indeed, this same testimony was offered by Mario Ceballos, and yet the court ruled that no self-defense instruction was warranted.

- 10 -

Counsel will not be found ineffective for failing to call a witness "unless the petitioner can show that the witness's testimony would have been helpful to the defense. A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." *Id.* (internal quotation marks and citations omitted).

*Commonwealth v. Matias*, 63 A.3d 807, 810–11 (Pa. Super. 2013).

In the present case, Appellant claims that he provided counsel with the names and contact information of five individuals who were willing to testify on his behalf, but counsel only called one character witness, Theresa Robles. Appellant acknowledges that Ms. Robles testified that he participated in a community program to stop violence, "he was … a mentor for being a nonviolent person[,]" and he had a reputation in the community for peacefulness. Appellant's Brief at 19 (quoting N.T. Trial at 415). However, Appellant avers that he was prejudiced by counsel's failure to call more character witnesses because, in counsel's opening statement, she had promised the jury that **multiple** witnesses would be called to "testify about Appellant's reputation in the community for being peaceful or nonviolent." *Id.* at 18. Appellant maintains that counsel's decision to call only **one** such witness "prevented [the jury] from believing that Appellant had others who would verify his character[,]" thus causing him prejudice. *Id.* at 20.

Appellant's argument is unconvincing. Appellant centers his argument that counsel 'promised' to call multiple character witnesses on the following portion of trial counsel's opening statement:

[Defense Counsel:] You will hear evidence from **witnesses** who will tell you that [Appellant] enjoys a reputation in the community of Reading for being a peaceful or nonviolent person. People will

- 11 -

not come in here and tell you he is a trouble-maker, he is a fighter and … one who starts up with other people. That's not what you will hear. You will hear that he enjoys a reputation for being a peaceful and nonviolent person and [the court] will tell you that we as human beings tend to act in conformity with our character. If you're a funny person[,] you act funny. If you're a peaceful person[,] you tend to act peaceful. If you're a dishonest person[,] you tend to act dishonestly.

*Id.* at 18 (quoting N.T. Trial at 54-55; emphasis added).

From this passage, it is clear that counsel only **once** referred to multiple character witnesses. We disagree with Appellant that this single remark amounted to a 'promise' to the jury that counsel failed to keep by calling only one character witness to the stand. Instead, counsel stated to the jury that they would hear evidence of Appellant's reputation for being peaceful and nonviolent, and counsel produced that evidence by calling Ms. Robles to the stand. Accordingly, we discern no prejudice caused to Appellant.[6]

_____

[6] We also point out that, of the five individuals who Appellant names as potential character witnesses, *see* Appellant's Brief at 19, only two submitted affidavits that referenced his reputation in the community for being peaceful or nonviolent. *See* Appellant's *Pro Se* PCRA Petition, 3/6/14, at "Exhibit A" (affidavits of Lamberto Figueroa, Luis E. Figueroa-Villaseñor, and Natalie Palomaes) and "Exhibit C" (affidavits of Maria M. Mora-Zavala and Jesus Perez). Moreover, each of those two individuals, Lamberto Figueroa and Luis E. Figueroa-Villaseñor, presented only a one-sentence statement that Appellant has a "good" or "great" reputation in the community for being peaceful and nonviolent; neither man elaborated on that claim in any way. *See id.* at "Exhibit A" (affidavits of Figueroa and Figueroa-Villaseñor). In light of the character testimony offered by Ms. Robles, and the boilerplate statements in Figueroa's and Figueroa-Villaseñor's affidavits, Appellant has not demonstrated that the absence of their character testimony deprived him of a fair trial.

In sum, none of Appellant's three claims of ineffective assistance of trial counsel raises a genuine issue of material fact necessitating a hearing. Therefore, the PCRA court did not err in denying his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2018