746 A.2d 1102

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**William NIEVES, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 9, 1999.

Decided Feb. 17, 2000.

530

Jack McMahon, Philadelphia, for William Nieves.

Catherine Marshall, Philadelphia, for Com.

Robert A. Graci, Harrisburg, for Office of Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This is a direct appeal pursuant to 42 Pa.C.S. §§ 722(4) and 9711(h). Following a jury trial, Appellant was convicted of first degree murder and possession of an instrument of crime. The jury found one aggravating circumstance, that the victim and Appellant had been associated in the manufacture or distribution of a controlled substance and the killing was related to that association, 42 Pa.C.S. § 9711(d)(14). As no mitigating circumstances were found, Appellant was sentenced to death. For the reasons that follow, we reverse and grant a new trial.

The record establishes that Appellant and Eric McAiley left the Princess Lounge together on December 22, 1992. The two men proceeded to 4128 Old York Road, Philadelphia, where McAiley exited the vehicle and began walking away. Appellant then stepped out of the car and fired shots at McAiley, killing him. Police Officer Michael Weleski was about one block away when he heard three gunshots. As he drove toward the vicinity, he saw a brown Cadillac with a bearded Hispanic male behind the wheel. The car stopped, the man pointed toward the area where the shooting occurred and drove away. Officer Weleski did not pay attention to the man and could not make an identification.

Upon arriving at the scene, Officer Weleski and his partner observed McAiley lying on the pavement. No one at the scene could identify the perpetrator. One witness, however, Dawn Newman, later came forward and informed police that she observed Appellant step out of a Cadillac and shoot McAiley. Newman explained that her initial failure to identify

Appellant was due to her past background involving drugs and prostitution. At trial, McAiley's nephew testified that McAiley sold drugs for Appellant. Johnuall Bender also testified that there was a drug relationship between Appellant and McAiley. Bender further stated that he was present at the Princess Lounge immediately before the murder and overheard Appellant say to McAiley, "[B]etter get me my fucking money, I'm not playing with you." N.T. 7/25/94.

At the conclusion of the testimony, Appellant was colloquied and indicated that he did not wish to testify and that he had no witnesses he wished to call. He also indicated that he was satisfied with his attorney's representation. Following the imposition of the death sentence, trial counsel orally argued post verdict motions, which were denied.[1]

Appellant filed an appeal with our Court, contending, *inter alia,* that trial counsel deprived him of his right to testify at trial by misinforming him that if he testified, the Commonwealth could impeach him with his prior convictions, none of which were *crimen falsi*. In the alternative, Appellant requested that the matter be remanded for a hearing to allow him to substantiate this allegation. Following oral argument before our Court, we remanded the case to the common pleas court for an evidentiary hearing on the issue of ineffective assistance of counsel, retaining jurisdiction over the matter. *Commonwealth v. Nieves,* 542 Pa. 613, 669 A.2d 338 (1995).

Several evidentiary hearings were held from May of 1996 through March of 1998, after which the common pleas court made findings of fact regarding trial counsel's stewardship.[2] Appellant and the Commonwealth filed supplemental briefs with our Court, and the direct appeal is now ready for disposition.

1. The trial court's opinion addressed only the weight and sufficiency of the evidence and an issue involving the impeachment of the jury verdict.

2. The common pleas court also concluded, as a matter of law, that trial counsel was ineffective for advising Appellant not to testify based upon convictions that were not *crimen falsi*. This conclusion, however, is merely advisory as our Court retained jurisdiction over the matter.

■ Although we generally address the sufficiency of the evidence in first degree murder cases where the death penalty is imposed, such review is unnecessary where we are reversing and remanding for a new trial. *See Commonwealth v. Green*, 536 Pa. 599, 640 A.2d 1242 (1994). Accordingly, because we find that a new trial is warranted due to trial counsel's ineffectiveness, we need only address that issue.[3]

■ The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. *Commonwealth v. Uderra*, 550 Pa. 389, 706 A.2d 334 (1998); *Commonwealth v. Bazabe*, 404 Pa.Super. 408, 590 A.2d 1298, *alloc. denied*, 528 Pa. 635, 598 A.2d 992 (1991); *Commonwealth v. Fowler*, 362 Pa.Super. 81, 523 A.2d 784, *alloc. denied*, 517 Pa. 598, 535 A.2d 1056 (1987). In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. *Id.* Our analysis of this claim begins

3. Appellant also raises the following issues: (1) Whether the trial court erred in denying Appellant a second opportunity for a lineup; (2) Whether there was sufficient evidence to support the aggravating circumstance that the victim and Appellant had been associated in the manufacture or distribution of a controlled substance and the killing was related to that association, 42 Pa.C.S. § 9711(d)(14); (3) Whether trial counsel was ineffective for eliciting information from Officer Weleski which corroborated the theory of the Commonwealth's case; (4) Whether trial counsel was ineffective for introducing a letter that implicated Appellant in the killing; (5) Whether trial counsel was ineffective for failing to object to inadmissible hearsay testimony; (6) Whether trial counsel was ineffective for allowing the introduction of testimony from Warren McAiley that the victim worked for Appellant in the drug business; (7) Whether trial counsel was ineffective for waiving Appellant's opportunity to participate in a lineup; (8) Whether trial counsel was ineffective for failing to request a *Sexton* charge after the trial court denied a second lineup; (9) Whether trial counsel was ineffective during the penalty phase for failing to advise Appellant that he could call as many witnesses as he chose to testify on his behalf; and, (10) Whether trial counsel was ineffective for failing to object during the penalty hearing when the prosecutor erroneously cross-examined Appellant about his prior criminal record.

534

with an examination of the testimony given at the evidentiary hearing.

■ Appellant testified that he desired to testify at trial and deny guilt, but that counsel advised him that if he did, he would be impeached with his prior criminal record. At the time of trial, Appellant had been convicted of two firearms offenses and at least two drug trafficking offenses.[4] Appellant stated that, notwithstanding counsel's admonition, he again indicated his desire to testify and counsel "made it final and clear to [him] at that point that [he] would be impeached by the prior criminal record." N.T. 5/24/96 at 6.

■ Trial counsel confirmed that Appellant desired to testify and that he advised Appellant not to testify because he could be impeached by his criminal record. *Id.* at 12. We agree with Appellant that such advice was clearly unreasonable as it is well-established that evidence of prior convictions can only be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement. *Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326 (1987). Appellant's convictions of drug trafficking and firearms offenses did not involve dishonesty or false statements and therefore would not have been admissible to impeach his credibility. As the common pleas court credited Appellant's testimony that his decision not to testify was based solely on this erroneous advice, such decision cannot be deemed knowing or intelligent. The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly

4. The common pleas court issued two opinions, one on May 7, 1998, and a second opinion on May 13, 1998, wherein it listed findings of facts as well as conclusions of law. The May 13, 1998, opinion indicated that Appellant had only one prior conviction of possession of a firearm without a license. The Commonwealth, however, properly notes that Appellant's Exhibit A to his original brief filed in our Court contains an excerpt of his complete criminal record, which shows at least two convictions for drug-trafficking and two convictions for weapons offenses. Rather than acknowledging this error, Appellant merely reiterated the incorrect finding of the common pleas court in the factual summary in his supplemental brief. We look with disfavor upon this type of "silent advocacy."

guaranteed by Article I, Section 9 of the Pennsylvania Constitution. *Commonwealth v. Jermyn,* 516 Pa. 460, 533 A.2d 74 (1987). The decision to forgo such a significant right in a capital case can not be based on mistaken guidance.

The Commonwealth, however, contends that, contrary to the findings of the common pleas court, trial counsel never stated that he advised Appellant not to testify because his prior convictions were *crimen falsi.*[5] Instead, the Commonwealth argues that trial counsel believed Appellant should not testify at trial because if he did, the Commonwealth could cross-examine him regarding the motive for the killing, which was allegedly a drug debt, and thereby introduce his prior drug convictions. As illustrative of its point, the Commonwealth asserts that Appellant did in fact testify at the penalty phase of trial and portrayed himself as a "small-time drug dealer" who had only a few drug transactions with the victim, involving five or ten dollars. The Commonwealth then cross-examined Appellant about conduct inconsistent with his self-characterization and referred to his prior drug and weapon arrests.[6]

Although trial counsel alluded to the fact that he was initially concerned with opening the door to evidence of drug activity, when the court expressly inquired whether that was why he advised Appellant not to testify, trial counsel replied that it was not. Jack McMahon, Appellant's appellate counsel, questioned trial counsel as follows:

> **Mr. McMahon:** And did you indicate to [Appellant] as he has testified here today that you did not think that [testifying] was a good idea because his prior record could be used to impeach him? Did you indicate that to him at some point in time?

**5.** The Commonwealth also contends that Appellant's decision to testify was his own and that it was freely and voluntarily made. Although the court conducted an extensive colloquy after which Appellant indicated that it was his decision not to testify, Appellant indicated at the evidentiary hearing that such decision was based solely on trial counsel's advice. Thus, the pertinent inquiry is whether counsel's advice was reasonable so as to render Appellant's decision not to testify knowing and voluntary.

**6.** As noted in footnote three, the propriety of this cross-examination is the subject of one of the issues Appellant raises in this appeal.

**Trial Counsel:** Yes, I believe at the beginning. See that is what I want to say. I believed absolutely that may open some doors and I said that but toward the end those doors were obliviated, they weren't any longer open and I just forgot about it fundamentally after that.

**Mr. McMahon:** So you never changed your advice to him that you initially gave that is that—that his record could be used to impeach him?

**Trial Counsel:** That is correct.

N.T. 5/24/96, at 13.

After Mr. McMahon completed his questions, the court asked trial counsel what the basis was for his opinion that Appellant should not testify. Trial counsel replied:

First of all, the Commonwealth was at the beginning of this case arguing that it was drug related. Okay. And there was a collateral problem, you know, prior acts coming in. Now, that was true at the beginning of the trial. At the end—at the point where we got to the end that had been oviated [sic] by what went on but I just—like—I will be honest with you, your Honor, I thought I had the case won. I just stopped at that point in time. I didn't really think it out or anything else.

*Id.* at 14.

The following exchange then occurred.

**Mr. McMahon:** As a result you never changed your original advice to him regarding impeaching with his prior record; is that correct:?

**Trial Counsel:** That is correct.

**Mr. McMahon:** I have no further questions.

**The Court:** Of the drug related convictions as it relates to the motive in this killing?

**Mr. McMahon:** Judge, that was not the issue in front of the Supreme Court and that is not the issue here.

**The Court:** *The whole point is that attorney giving advice to his client based upon his perception that it is possible that prior convictions of drug related incidents*

*could come in if it related to the motive that occurred in this case.*

**Trial counsel:** *Let me interrupt you, that wasn't true.* That issue really was ened [sic] about the beginning of trial. And I—[Appellant]—I have known [Appellant] for a long time and I have represented him in many things and I think if Your Honor recalls this case at all, I had a—I had a very smug attitude about the whole thing at the time. [Appellant] after 10, 12 years with me, listened to everything I said. I never had to explain anything. It was one of those do you trust me and unfortunately he trusted me.

*Id.* at 14–15 (emphasis added).

As is evident from the above passage, trial counsel acknowledged that he did not have an alternative reasonable strategy for advising Appellant not to testify. He flatly denied that his advice was based upon any fear that prior drug convictions would have been admitted. *Cf. Commonwealth v. Garrity*, 509 Pa. 46, 500 A.2d 1106 (1985) (trial counsel's belief that defendant was young, naïve and unsophisticated and might not fare well under cross-examination constituted reasonable basis for advising defendant not to testify). Under these circumstances, we are compelled to hold that trial counsel's advice was so unreasonable as to vitiate Appellant's knowing and intelligent decision not to testify.[7]

Accordingly, Appellant's sentence of death is vacated and the matter is remanded for a new trial.

Justices CAPPY and NIGRO concur in the result.

Justice CASTILLE dissents.

---

**7.** The fact that Appellant's testimony arguably worked to his detriment during the penalty phase of trial does not compel a different conclusion. First, claims of counsel's ineffectiveness may not be evaluated in hindsight. *Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400 (1997). Second, it is sheer speculation to conclude that what transpired during the penalty phase would have occurred at trial. Finally, there is no basis to conclude that Appellant suffered prejudice from the admission of his prior drug arrests since there was already evidence that Appellant engaged in drug activity.