J-S01042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHARLES BUSH | |
| Appellant | No. 3052 EDA 2014 |

Appeal from the PCRA Order September 29, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014674-2009

BEFORE:  GANTMAN, P.J., MUNDY, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:               **FILED JANUARY 20, 2016**

Appellant, Charles Bush, appeals from the order entered in the Philadelphia County Court of Common Pleas, dismissing his first petition brought pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows.

> Appellant was charged with the assault of his seventeen-year-old daughter, Yisa Johnson.  On August 31, 2006, at approximately 11:00 p.m., medics were dispatched to the home of Yvette Johnson, Yisa's mother.  The medics found Yisa hysterically crying and screaming with several injuries, including a bleeding head wound.  Yisa was transported to Children's Hospital of Philadelphia where doctors sealed her chin laceration with three stitches and her head laceration with four staples.
>
> Yisa consistently told paramedics, detectives, and the

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

emergency room physician that Appellant hit her over the head with a hammer multiple times when she came home late through the front door of her home. In her signed statement to police, Yisa also claimed Appellant cursed at her, pulled her hair, and threatened to kill her. Yisa believed Appellant would have killed her had her boyfriend, Decarlos Miller, and her friends not pulled Appellant off of her. Appellant left the home after the attack.

After obtaining a search warrant for Yvette Johnson's home, detectives discovered drops of blood on the porch and entrance area. Yvette directed detectives to a hammer on the kitchen table with red stains on it. Over a week later, detectives obtained a signed statement from Decarlos Miller, in which he claimed he witnessed Appellant hit Yisa multiple times in the head with a hammer and gave an account of the incident consistent with Yisa's statement to police.

On September 14, 2006, police obtained a warrant for Appellant's arrest. However, despite numerous attempts to find Appellant, police did not apprehend him until June 2, 2008, when he was arrested on the outstanding warrant. Appellant was charged with attempted murder, aggravated assault, possessing an instrument of crime, recklessly endangering another person (REAP), and endangering the welfare of a child. Appellant proceeded to a jury trial which commenced on June 22, 2010.

At trial, Yisa, Decarlos, and Yvette all recanted their prior statements of Appellant's assault. Yisa had no recollection of her father hitting her with a hammer and denied giving police a statement. She could not remember getting staples in her head [or] getting them removed. When questioned about her memory loss, Yisa claimed she was under the influence of marijuana on the night in question and denied remembering anything. Although Yisa testified that she did not have a close relationship with Appellant at the time of the assault, she claimed their relationship "got way better" afterward.

Similarly, Decarlos also had no recollection of the assault or his statement to detectives and claimed to be under the influence of drugs that night. He denied ever meeting

Appellant or even knowing Appellant's name. Decarlos claimed the signature that appeared in cursive on his statement to police was not his, because he allegedly "prints" his signature. Detective Timothy Mayer testified that neither Yisa nor Decarlos appeared to be under the influence of a controlled substance when they gave their statements.

Yisa's mother, Yvette Johnson, denied showing detectives the hammer used in the assault when they searched her home. Even after the prosecutor showed Yvette the actual hammer and a picture of the hammer lying on her kitchen table, Yvette testified that she had never seen the hammer before. Appellant testified on his own behalf, claiming that Yisa and her friends burst through the door and attacked him. He claimed he started swinging at the group in self-defense, but never swung a hammer. Appellant admitted on direct examination that he had a 2002 robbery conviction for which he was still on parole at the time of the altercation.

At the conclusion of the trial, the jury convicted Appellant of aggravated assault and endangering the welfare of a child, but acquitted him of the remaining charges. On October 7, 2010, the trial court sentenced Appellant to an aggregate sentence of eleven (11) to twenty-two (22) years['] imprisonment.

*Commonwealth v. Bush*, No. 2913 EDA 2010, unpublished memorandum at 1-4 (Pa.Super. filed November 21, 2011).

Appellant filed a timely post-sentence motion, which the court denied on October 18, 2010. Appellant filed a notice of appeal on October 22, 2010, and this Court affirmed the judgment of sentence on November 21, 2011. *Id.* Our Supreme Court denied Appellant's petition for allowance of appeal on May 15, 2012. *See Commonwealth v. Bush*, 615 Pa. 789, 44 A.3d 1160 (2012).

Appellant timely filed a *pro se* PCRA petition on October 22, 2012. The PCRA court appointed counsel, and counsel filed an amended PCRA petition on November 22, 2013. The PCRA court held an evidentiary hearing on June 30, 2014. Appellant's trial counsel testified at the hearing and stated he had warned Appellant that his prior conviction could be used to impeach him if he testified at trial. Counsel stated Appellant agreed to testify, and Appellant knew trial counsel intended to bring out Appellant's prior conviction on direct examination as a strategy to minimize its impact on the jury.

The PCRA court denied PCRA relief on September 29, 2014. Appellant timely filed a notice of appeal on October 29, 2014. The court ordered on November 14, 2014, Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on December 5, 2014.

Appellant raises one issue for our review:

> SHOULD THIS MATTER BE REMANDED FOR THE PCRA COURT TO MAKE A SPECIFIC CREDIBILITY FINDING THAT IS CENTRAL TO [APPELLANT'S] ALLEGATION OF INEFFECTIVE ASSISTANCE OF COUNSEL?

(Appellant's Brief at 4).

Appellant argues he was totally unaware that his prior robbery conviction could be used to impeach him if he testified at trial. Appellant asserts he would not have testified at trial if he had known his prior robbery conviction could be used to impeach him, and trial counsel unreasonably

failed to apprise him of that risk. Appellant contends the PCRA court did not find as a matter of fact that trial counsel had advised Appellant of the possibility of his prior conviction coming forward at trial. According to Appellant, if he had not taken the stand, then the jury would have been left with just the testimony of the three recanting witnesses. Appellant maintains trial counsel's strategy of putting Appellant on the stand and exposing him to the jury as a person with poor credibility made him easier to convict. Appellant concludes this Court should reverse the PCRA court's order dismissing his petition and remand for a specific finding of fact on whether trial counsel warned Appellant. We disagree.

Our standard of review for the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings; however, we give no deference to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa.Super. 2012). "Traditionally, issues of credibility are within the sole domain of the trier of fact [because] it is the trier of fact who had the opportunity to personally observe the demeanor of the witnesses." *Commonwealth v. Abu-Jamal*, 553 Pa. 485, 527, 720 A.2d 79, 99 (1998), *cert. denied*, 528 U.S. 810, 120

S.Ct. 41, 145 L.Ed.2d 38 (1999). "[A]s with any other credibility determination, where the record supports the PCRA court's credibility determinations, those determinations are binding" on this Court. *Id.*

The law presumes counsel has rendered effective assistance. *Commonwealth v. Williams*, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Williams, supra*.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [***Kimball, supra***], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

By specifically finding a particular witness credible, the court implicitly rejects claims contradictory to that witness' testimony. *In re M.K.*, 636 A.2d 198, 201 (Pa.Super. 1994), *appeal denied*, 537 Pa. 633, 642 A.2d 486 (1994) (holding trial court's finding witness testified credibly implies rejection of appellant's claim that witness' testimony was fabricated).

> Claims alleging ineffectiveness of counsel premised on allegations that trial counsel's actions interfered with an accused's right to testify require a defendant to prove either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

*Commonwealth v. Miller*, 605 Pa. 1, 38, 987 A.2d 638, 660 (2009) (quoting *Commonwealth v. Nieves*, 560 Pa. 529, 533, 746 A.2d 1102, 1104 (2000)). Where counsel discusses the right to testify with a defendant and advises the defendant on whether he should testify in accordance with

counsel's strategy, counsel has not rendered deficient performance.

***Commonwealth v. Preston***, 613 A.2d 603, 606 (Pa.Super. 1992), *appeal denied*, 533 Pa. 658, 625 A.2d 1192 (1993).

> Even where its use is properly limited to impeaching credibility, the introduction of a defendant's criminal record possesses a potential for severe prejudicial impact on a jury. Thus, there would rarely be a time when the introduction of such evidence would produce some result favorable to the defendant. Nevertheless, there may be situations where a defense attorney is substantially certain that the prosecution will utilize a defendant's prior convictions if he decides to testify. In those situations, it may be reasonable trial strategy for the defense counsel to bring those convictions out on direct examination in order to minimize their impact, thus muting the prosecution's thunder. Before doing so, however, counsel should be convinced that such evidence is available to the prosecution, *i.e.*, that the convictions would properly be admissible to impeach the defendant's credibility.

***Commonwealth v. Zapata***, 455 Pa. 205, 208, 314 A.2d 299, 301 (1974).

Instantly, the PCRA court responded to Appellant's claim as follows:

> Counsel…testified, of course, and reiterated that he had many discussions with [Appellant] concerning his testifying on his own behalf. [Counsel] in his opinion thought that it was important for [Appellant] to testify on his own behalf [and counsel] discussed that with [Appellant]. He discussed that the prior robbery conviction would most certainly be used by the Assistant District Attorney. However, [counsel] told [Appellant] that as part of his strategy, trial strategy, [counsel] would bring that fact out himself on direct examination, which he did, and told the jury, of course, that [Appellant] was going to testify and that that was the trial strategy agreed upon between himself and [Appellant].
>
> It is clear from the record. It was clear at trial. It was also clear at the PCRA evidentiary hearing…[counsel] testified credibly that in fact he did go over this trial

strategy with [Appellant] extensively and that based on [Appellant's] agreement, he opened to the jury that [Appellant] was going to testify. [Counsel] in fact put [Appellant] on the stand. [Appellant] did not indicate any unwillingness to testify.

When I offered to colloquy him on whether…to testify, [Appellant] was in the room. [Appellant] heard [counsel] say: "It's not necessary, Your Honor. I've gone through this with him over and over again. He's aware of his right to remain silent."

That is on the record so I don't find that that claim raised by [Appellant] has merit. There is no error under those circumstances.

(N.T. PCRA Evidentiary Hearing, 9/29/14, at 1-2).

In its subsequent Rule 1925(a) opinion, the PCRA court reasoned:

[From] the outset of trial, Appellant made it clear to the jury that he was going to testify in his own defense to refute the Commonwealth's allegations. Prior to his testimony, this [c]ourt offered to colloquy Appellant on the decision of whether…to testify. Counsel for Appellant…declined, stating, "I have abundantly covered this numerous times with him, and he's absolutely aware of his right to refuse to testify."

\* \* \*

Based on the evidence presented at the hearing, and having presided over Appellant's trial, this Court found Appellant's ineffectiveness claim to be devoid of merit.

Moreover, it bears noting that Appellant is **not** claiming that counsel erred by waiving the colloquy (rendering his decision to testify "unknowing" and/or "unintelligent")— rather, he claims that counsel was ineffective for not advising him that he could be impeached with his prior robbery conviction. However, there is no doubt whatever that the jury based its verdict on Appellant's **repeatedly admitting to punching his daughter three or four times** coupled with her significant injuries—and **not** on his

- 9 -

prior conviction for robbery. Indeed, **even if Appellant had a *pristine* prior record**, the jury would have convicted him based on the evidence adduced at trial.

Nonetheless, Appellant's decision to take the stand proved quite beneficial. That is, the jury obviously found his testimony credible, having acquitted him of Attempted Murder, PIC and REAP. As such, far from suffering prejudice as a result of testifying at trial, Appellant **significantly benefited** therefrom. In short, putting aside the utter meritlessness of his claim, Appellant did not, and indeed cannot, establish actual prejudice. For this reason alone, he is due no relief.

(PCRA Court Opinion, filed January 20, 2015, at 9) (emphasis in original).

Contrary to Appellant's argument, the PCRA court did make a specific credibility finding in favor of trial counsel's entire testimony, which included telling Appellant that his past robbery conviction could be used to impeach him if he testified on his own behalf and of counsel's trial strategy to reveal it on direct examination to minimize its impact. *See Abu-Jamal, supra*; *In re M.K., supra*. The record supports the PCRA court's evaluation. Therefore, no remand is necessary. Additionally, we agree with the PCRA court that Appellant benefited from trial counsel's strategy, where the jury obviously believed Appellant and acquitted him of attempted murder, PIC and REAP. Appellant failed to prove how he was prejudiced by counsel's trial strategy or why PCRA relief was warranted. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/20/2016