J-S26036-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                              :          PENNSYLVANIA
                              :
          v.                  :
                              :
                              :
SAMUEL OKORIE                :
                              :
          Appellant       :     No. 1790 WDA 2019

Appeal from the PCRA Order Entered November 7, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0012588-2014

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:             FILED JULY 07, 2020

Samuel Okorie (Okorie) appeals from the order entered in the Court of Common Pleas of Allegheny County (PCRA court) dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

I.

This case stems from Okorie's bench conviction of two counts of rape and one count each of kidnapping, involuntary deviant sexual intercourse, (IDSI) and robbery[1] for his September 2014 rape of the then twenty-two year

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 2901(a)(1), 3123 and 3701.

old victim, C.W. We recount the relevant factual and procedural background below.

A.

On September 6, 2014, at about 2:00 a.m., Okorie offered C.W. a ride home from the Southside section of the City of Pittsburgh where C.W. was celebrating her friend's birthday at a bar. C.W. initially declined Okorie's offer and left in a car with her friends. She became angry with her friends, exited the vehicle and while walking along the roadside, accepted a ride from Okorie, who was riding as a passenger in a car behind her.

Instead of following C.W.'s directions to drive her home, the driver of the car pulled over to the side of the road and Okorie pulled C.W. out of the vehicle. Okorie raped C.W. on the ground in a parking lot and then forced her into his residence where he had non-consensual vaginal and anal intercourse with her. C.W. fled Okorie's residence at about 6:00 a.m. and pounded on the door of a neighbor's home. She was barefoot, had no purse and was shaking and crying uncontrollably and yelling that she had been raped. The neighbor called 911 and C.W. directed police to Okorie's residence and identified him as the perpetrator. Police recovered C.W.'s cell telephone and her ripped underwear during their search of Okorie's bedroom. C.W. went to the hospital and was extremely emotional, verging on hysteria. Medical personnel conducted a rape kit examination that showed Okorie's semen and DNA were present in her vaginal cervix and genital and rectal areas.

Okorie proceeded to a two-day bench trial on May 12, 2015, where he expressly waived his right to a jury trial. The court then conducted the following colloquy:

> The Court: Mr. Okorie, you have been sworn and I understand that you are not going to take the stand to testify, is that correct?
>
> The Defendant: Yes, Your Honor.
>
> The Court: And do you understand that you have an absolute right to take the stand and to testify?
>
> The Defendant: Yes, Your Honor.
>
> The Court: And if you do that, you can also present character witnesses to testify to the good character that you exhibit in the community?
>
> The Defendant: Yes, Your Honor.
>
> The Court: And you are choosing not to take the stand. Has anybody promised you anything or threatened you in any way that may have influenced your decision?
>
> The Defendant: No, Your Honor.

(N.T. Trial, 5/13/15, at 115-116) (emphasis added).

The court convicted Okorie of the above-listed offenses and sentenced him to an aggregate term of not less than twenty nor more than forty years' incarceration. This Court affirmed his judgment of sentence on November 8, 2016, and Okorie did not seek further direct review. He filed a timely PCRA petition on March 21, 2017, which the PCRA court denied without a hearing. On appeal, this Court vacated the PCRA court's order denying the petition and remanded the case for an evidentiary hearing on Okorie's claim of ineffective

assistance of trial counsel. Specifically, this Court found: a hearing was necessary where Okorie had consistently argued that his trial counsel, Art Ettinger, Esq., (Attorney Ettinger) was ineffective for giving deficient advice regarding his right to testify on his own behalf at trial; and the PCRA court erred by accepting PCRA counsel's account of trial counsel's proffered strategy without holding a hearing to assess credibility. (See Commonwealth v. Okorie, 2018 WL 3358618 (Pa. Super. filed July 10, 2018)).

B.

The PCRA court held a hearing on the limited issue of trial counsel's ineffectiveness in advising Okorie not to testify at his trial, at which Okorie and Attorney Ettinger appeared. Their testimony was consistent in that it showed Okorie insisted on proceeding to a bench trial instead of a jury trial, which was directly contrary to Attorney Ettinger's advice. Okorie averred that he expressed to Attorney Ettinger that he wanted to testify in his defense at trial, but he did not do so because Attorney Ettinger advised against it. (See PCRA Hearing, 8/06/19, at 10-11). He also stated that he decided not to testify in part because Attorney Ettinger told him that his case was a "win/win" and he understood that to mean he "won the case, so there was no need for [him] to testify." (Id. at 13-14).

Attorney Ettinger testified that he has been a public defender since 2002 and that he had strongly advised Okorie to proceed with a jury trial instead of a bench trial, primarily because "the Judge he was in front of is not a Judge

- 4 -

known for finding people not guilty on charges of this nature." (Id. at 17-18). Once Attorney Ettinger realized that he was unable to convince Okorie to go to a jury trial, he had many conversations with his client about whether to testify and went through practice runs of his direct and cross-examination. (See id. at 18). Attorney Ettinger explained that he strongly advised Okorie not to testify when the Commonwealth introduced into evidence an exculpatory statement that Okorie had made to police following his arrest in which he averred that he had consensual sex with C.W. (See id. at 20).[2]

Attorney Ettinger testified that although he may have used the phrase "win/win" in connection with Okorie's exculpatory statement to police, he used it in the context of introducing Okorie's version of events into evidence without him actually testifying. (See id. at 21). Counsel explained that he was surprised when the trial court stated that it would not give the same weight to Okorie's statement as it did to C.W.'s testimony because it was not subject to cross-examination, but that the case had gone well overall because of inconsistencies in C.W.'s testimony and he was optimistic that the court would rule in Okorie's favor. (See id. at 17, 21, 24-26).

_____

[2] Specifically, Detective Bryan Sellers of the City of Pittsburgh Police testified that Okorie recounted during an interview that he had consensual vaginal and anal sex with C.W. He also represented that he did not know C.W.'s name and spontaneously volunteered that he gently removed her underwear.

The Commonwealth then elicited the following testimony from Attorney Ettinger:

> Q. Did you at any time promise and assure, as Mr. Okorie indicates, that if he did not testify, he would win?
>
> A. No.
>
> Q. And you testified that you advised your client to go to jury trial, but he decided on his own that he wanted to go to nonjury; correct? And that's, in fact, how this case proceeded?
>
> A. Correct.
>
> Q. So you would agree with me, in that instance, he was capable of making a decision contrary to your advice? In that instance, as it pertains to going jury or nonjury?
>
>                   *    *    *
>
> Q . . . I'll phrase it differently. He decided to do something contrary to your advice in that regard as it related to nonjury versus jury trial?
>
> A. He did. I strongly discouraged him from proceeding in that manner.

(Id. at 28-29).

After the hearing, the Commonwealth and counsel for Okorie submitted briefs in support of their respective positions. The PCRA court denied Okorie's PCRA petition. In its opinion, the court credited Attorney Ettinger's testimony in its entirety with respect to the events and statements at issue; it credited most of Okorie's testimony as well, but found Attorney Ettinger's recounting of events more credible where there were any inconsistencies. (See PCRA Court Opinion, 11/07/19, at 5). It specifically found that Attorney Ettinger did

not promise Okorie that he would win the case if he did not testify. (See id. at 7). Okorie timely appealed from the PCRA court's order.[3]

## II.

On appeal, Okorie challenges the assistance of trial counsel. See 42 Pa.C.S. § 9543(a)(2)(ii).[4] "The law presumes counsel has rendered effective assistance." Postie, supra at 1022 (citation omitted). "In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Id. (citation omitted). "The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." Id. (citation omitted). "The petitioner bears the burden of proving all three prongs of the test." Id. (citation omitted).

_____

[3] The PCRA court did not order Okorie to file a Rule 1925(b) statement. It filed an opinion on December 11, 2019. See Pa.R.A.P. 1925(a)-(b).

[4] "Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error." Commonwealth v. Postie, 200 A.3d 1015, 1022 (Pa. Super. 2018) (en banc) (citations omitted).

"A claim has arguable merit where the factual averments, if accurate, could establish cause for relief." Id. at 1023 (citation omitted). Additionally, "[w]here matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." Commonwealth v. Adams-Smith, 209 A.3d 1011, 1019–20 (Pa. Super. 2019) (citation omitted). "[W]e do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." Commonwealth v. Stewart, 84 A.3d 701, 707 (Pa. Super. 2013) (citation omitted).

Furthermore, with regard to Okorie's claim of Attorney Ettinger's inept advice concerning his right to testify:

> The decision to testify on one's own behalf is ultimately to be made by the accused after full consultation with counsel. In order to support a claim that counsel was ineffective for failing to call the appellant to the stand, the appellant must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify on his own behalf.
>
> Counsel is not ineffective where counsel's decision to not call the defendant was reasonable.

Commonwealth v. O'Bidos, 849 A.2d 243, 250 (Pa. Super. 2004) (citation omitted).

We are also mindful that we must view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party

here, the Commonwealth. See Commonwealth v. Mason, 130 A.3d 601, 617 (Pa. 2015). In addition, the PCRA court's determinations regarding the credibility of the witnesses' testimony are binding on this Court where they are supported by the record. See id.

## A.

Okorie first claims that Attorney Ettinger was ineffective in advising him not to testify at trial and in relying on the Commonwealth's introduction of his exculpatory statement to police to provide him with the defense of consent. He also challenges counsel's use of the phrase "win/win" in connection with the exculpatory statement, which he claims was confusing and led him to believe that his testimony was unnecessary because he was going to win the case. (See Okorie' Brief, at 17-22).

At the PCRA hearing, Attorney Ettinger, a public defender with seventeen years of experience, testified that he initially prepared Okorie for trial based on his assumption the Commonwealth would ultimately not introduce his statement given that it was exculpatory and his expectation that the only means of introducing Okorie's version of events into evidence was through his actual testimony. (See N.T. PCRA, at 19). He met with Okorie approximately one dozen times and went through multiple practice runs of his testimony, including mock direct and cross-examination. (See id. at 18). Attorney Ettinger explained that when the Commonwealth did introduce Okorie's statement, he advised Okorie not to testify because his version of the

incident as a consensual encounter instead of rape was now in evidence. (See id. at 21). The PCRA court determined that counsel's decision not to call Okorie to the stand was reasonable, finding:

> [T]here [was] certainly a reasonable strategic basis behind relying on that exculpatory statement, which was ultimately considered by the Court, while not subjecting a client to the potential perils that testifying presents, namely rigorous cross-examination. This is especially so in a situation where an attorney, based upon his or her interactions with a client, harbors legitimate concerns with respect to how that client might present on the stand. The Court credits Attorney Ettinger's testimony that he carefully explained, at several junctures, the benefits and potential pitfalls that testifying presents. The Court also credits Attorney Ettinger's testimony with respect to his statement regarding the "win-win" opportunity presented by the Commonwealth's introduction of Defendant's exculpatory statement. Attorney Ettinger felt that Defendant's case had gone well to that point, and made the decision based upon his experience, knowledge of the case, and preparation to advise his client against testifying. This Court finds that a reasonable strategic basis supported that advice.

(PCRA Ct. Op., at 7-8).

The PCRA court also found that Attorney Ettinger's advice did not negate Okorie's voluntary waiver of his right to testify, pointing out that he expressly waived his right to testify in open court at trial, and that he had demonstrated his willingness to disregard counsel's strong advice in favor of taking his own approach by proceeding with a bench trial instead of a jury trial. (See id. at 8).

We conclude that the PCRA court did not err by finding trial counsel was not ineffective for advising Okorie not to testify at trial. The record reflects that it was Attorney Ettinger's conscious trial strategy not to call Okorie as a

witness after the Commonwealth introduced his exculpatory statement because Okorie's version of events was entered into the record without him taking the risk of vigorous cross-examination. Moreover, Okorie has provided no evidence that counsel interfered with his freedom to testify or gave him specific advice so unreasonable as to vitiate a knowing and intelligent decision not to testify in his defense. See O'Bidos, supra at 250. Therefore, Okorie's first argument merits no relief.[5]

### B.

Okorie also contends that Attorney Ettinger was ineffective for failing to call him to testify on his own behalf once it became clear that the trial court would not give as much weight to his exculpatory statement as it did to C.W.'s testimony because it was not subject to cross-examination. Okorie asserts that when counsel became aware of this, he should have requested leave to reopen the case to allow his testimony. (See Okorie's Brief, at 22-23).

---

[5] Okorie's reliance on Commonwealth v. Nieves, 746 A.2d 1102 (Pa. 2000), is misplaced, as that case is factually distinguishable. In Nieves, trial counsel informed the defendant in a capital case that his convictions would be used to impeach him if he testified, even though his criminal record did not include crimen falsi convictions. See id. at 1104-05. Our Supreme Court found that such advice was clearly unreasonable because it is well-established that evidence of prior convictions can only be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement. See id. at 1105. The Court concluded counsel's advice vitiated the defendant's knowing and intelligent decision not to testify, which he based solely on counsel's erroneous advice. See id. at 1106. Nieves is inapposite to the instant case where Attorney Ettinger did not give Okorie patently erroneous legal advice on which Okorie solely based his decision not to testify.

First, we agree with the Commonwealth that Okorie is raising a new claim outside of the scope of this Court's limited remand "on [the issue of] whether trial counsel pursued a reasonable trial strategy in advising Appellant not to testify on his own behalf." (Okorie, supra at 10; see also Commonwealth's Brief, at 22). This specific argument is, therefore, waived. Furthermore, we note that although the trial court did not afford Okorie's statement the same weight as C.W.'s testimony, and Attorney Ettinger did not anticipate the court's position on this, Okorie's version of consensual sex was still introduced into evidence and considered by the court in rendering its verdict without subjecting Okorie to the hazard of rigorous cross-examination.

In sum, Okorie has failed meet his burden of establishing Attorney Ettinger rendered ineffective assistance by advising him not to testify at trial.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/7/2020


- 12 -