J-S11023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DWIGHT DARNELL BOWEN | : | |
| | : | |
| Appellant | : | No. 834 WDA 2024 |

Appeal from the PCRA Order Entered June 24, 2024
In the Court of Common Pleas of Indiana County Criminal Division at
No(s):  CP-32-CR-0001119-2019

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY KING, J.:                     **FILED:  April 25, 2025**

Appellant, Dwight Darnell Bowen, appeals from the order entered in the Indiana County Court of Common Pleas, which denied his timely first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On January 1, 2019, Appellant, incarcerated at State Correctional Institution ("SCI") Pine Grove, strangled his cellmate, Luis Santiago, with a t-shirt.  On September 18, 2020, a jury convicted Appellant of third-degree murder.  On December 17, 2020, the court sentenced Appellant to 20 to 40 years of incarceration, to be served consecutively to two life sentences Appellant was already serving for unrelated crimes.  Appellant filed a counseled post-sentence motion, followed by a *pro se* post-sentence motion indicating that

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

he intended to fire his counsel. On March 30, 2021, the court held a *Grazier*[2] hearing and granted Appellant's motion seeking self-representation. Nevertheless, the court appointed defense counsel to serve as stand-by counsel. On April 20, 2021, the court denied Appellant's post-sentence motion. This Court affirmed his judgment of sentence on April 29, 2022. *Commonwealth v. Bowen*, No. 609 WDA 2021 (Pa.Super. filed Apr. 29, 2022) (unpublished memorandum).

On July 25, 2022, Appellant timely filed a *pro se* PCRA petition. On December 27, 2022, appointed counsel filed an amended petition, and on March 10, 2023, a supplemental amended petition. The PCRA court convened a bifurcated evidentiary hearing, at which Appellant, as well as trial counsel Michael Smith, Esq. and Taylor Johnson, Esq., testified. On June 24, 2024, the court denied PCRA relief.

On July 4, 2024, Appellant timely appealed. On July 8, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On July 29, 2024, Appellant timely complied.

On appeal, Appellant raises the following issues for our review:

> I. WHETHER THE PCRA COURT ERRED WHEN IT MADE A FINDING THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE COUNSEL BECAUSE COUNSEL DID NOT CALL APPELLANT TO THE STAND TO TESTIFY IN HIS OWN SELF-DEFENSE CAUSING APPELLANT'S CONVICTION?
>
> II. WHETHER THE PCRA COURT ERRED WHEN IT MADE A FINDING THAT DEFENSE COUNSEL WAS NOT INEFFECTIVE

---

[2] *Commonwealth v. Grazier*, 552 Pa. 9, 713 A.2d 81 (1998).

COUNSEL BECAUSE COUNSEL DID NOT FORWARD MEDICAL DOCUMENTATION TO THEIR EXPERT WITNESS, WHICH PLACED HIS CREDIBILITY AT RISK DURING TRIAL, LEADING TO [APPELLANT'S] CONVICTION?

III. WHETHER THE PCRA COURT ERRED WHEN IT MADE A FINDING THAT COUNSEL WAS NOT INEFFECTIVE COUNSEL BECAUSE THEY DID NOT PROVIDE DISCOVERY TO APPELLANT UNTIL TRIAL REGARDING THE ALLEGED MURDER WEAPON (T-SHIRT) AND COUNSEL FAILED TO MAKE A REQUEST THAT THE T-SHIRT BE SHOWN TO THE JURY ALONG WITH AN INQUIRY THAT THE T-SHIRT DID NOT COME FROM THE CRIME SCENE, WHICH CAUSED [APPELLANT] TO BE CONVICTED?

(Appellant's Brief at 6).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error." ***Commonwealth v. Parker***, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." ***Commonwealth v. Prater***, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021). Further, where the PCRA court makes credibility determinations, we are bound by them if they are supported by the record. ***Commonwealth v. Mojica***, 242 A.3d 949 (Pa.Super. 2020), *appeal denied*, 666 Pa. 290, 252 A.3d 595 (2021).

"Counsel is presumed to have rendered effective assistance." ***Commonwealth v. Hopkins***, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal*

*denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012

(Pa.Super. 2016) (quoting **Pierce, supra** at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

**Commonwealth v. King**, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting **Sandusky, supra** at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." **Commonwealth v. Spotz**, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." **Hopkins, supra** at 876 (quoting **Commonwealth v. Chambers**, 570 Pa. 3, 33, 807 A.2d 872, 883 (2002)).

In Appellant's first issue, he contends that counsel were ineffective due to their failure to call Appellant to testify on his own behalf. Appellant argues that he wanted to testify on his own behalf and explain to the jury that he had acted in self-defense. Appellant admits that defense counsel did not interfere

with his right to testify but nevertheless claims that counsel should have called him to corroborate his claim of self-defense. Appellant insists that there were other witnesses who testified regarding Mr. Santiago's alleged propensity for violence, and that as a result, Appellant's own actions were justified. Appellant concludes his attorneys acted unreasonably by failing to call him to testify, that he was prejudiced as a result, and that this Court must grant relief. We disagree.

This Court has observed:

> "The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution." **Commonwealth v. Nieves**, 560 Pa. 529, 534-35, 746 A.2d 1102, 1105 (2000). Significantly, "the presumption must always be against the waiver of a constitutional right," and we are bound to "place the burden of proving waiver on the Commonwealth." **Commonwealth v. Robinson**, 970 A.2d 455, 458 (Pa.Super. 2009) (*en banc*) (internal citations omitted). Thus:
>
>> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.
>
> **Nieves, supra** at 533-34, 746 A.2d at 1104 (internal citations omitted).
>
>> [T]he appropriate standard for assessing whether a defendant was prejudiced by trial counsel's ineffectiveness regarding the waiver of his right to

testify is whether the result of the **waiver proceeding** would have been different absent counsel's ineffectiveness, not whether the outcome of the trial itself would have been more favorable had the defendant taken the stand.

***Commonwealth v. Walker***, 110 A.3d 1000, 1005 (Pa.Super. 2015), *appeal denied*, 633 Pa. 756, 125 A.3d 777 (2015) (emphasis in original).

***Commonwealth v. Washington***, 269 A.3d 1255, 1263-64 (Pa.Super. 2022) (*en banc*), *appeal denied*, ___ Pa. ___, 283 A.3d 1249 (2022). "It is well settled that a defendant who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify." ***Commonwealth v. Lawson***, 762 A.2d 753, 755 (Pa.Super. 2000), *appeal denied*, 566 Pa. 638, 781 A.2d 131 (2001) (citations omitted).

Instantly, we reiterate that Appellant admits counsel did not interfere with his right to testify. Therefore, he must prove that "counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." ***Nieves, supra*** at 533-34, 746 A.2d at 1104. The PCRA court observed:

> [T]he [c]ourt conducted an oral colloquy with [Appellant] regarding his right to testify. [Appellant] had the opportunity to ask the [c]ourt questions regarding his right to testify and he proceeded to ask questions, but none regarding testimony corroborating the defense of self-defense. [Appellant's] questions had to do with character testimony and past statements to corrections officers.
>
> As seen in the [trial transcript,] [Appellant] acknowledged that the right to testify or not to testify was his decision alone, and while [c]ounsel may give recommendations, [Appellant] affirmed that it was his decision not to testify at the trial. Additionally, [Appellant] had consistently

represented to [d]efense [c]ounsel that Mr. Santiago died of natural causes. The [d]efense strategy was that the victim's death was accidental. [D]efense [c]ounsel discussed with [Appellant] his right to testify several times. It is the [c]ourt's opinion that because [Appellant] was given an oral colloquy, an opportunity to ask the [c]ourt questions, which he utilized, that [Appellant] understood his rights and decided not to testify during the trial. As such, [d]efense [c]ounsel was not ineffective by not falling [to call Appellant] to the witness stand to assert … self-defense … [and] the [c]ourt does not find that this claim has arguable merit to support a claim of ineffective counsel.

(PCRA Court Opinion, 6/24/24, at 6-7) (internal citations to the record omitted). The court further concluded that even if there was a claim of arguable merit, counsel had a reasonable strategic basis for advising Appellant not to testify regarding self-defense. (**See id.** at 7-8). The PCRA court noted that such testimony would have undermined Appellant's trial strategy, and Appellant would have been required to admit that he had caused the victim's death. (**Id.** at 8). The court further explained that the chosen defense strategy was consistent with statements made by Appellant after the incident as testified to by other Commonwealth witnesses:

By way of example: "I asked him what happened and he said his cellie fell over." "I asked [Appellant] what happened. He responded to me, [Sarge], he fell out; he hit his head." "He told me that he was standing like toward the toilet but cooking and it looked like he turned over to go, like to go to the bathroom and then he just fell over." "At that time [Appellant] told me that his cellie was standing by the sink making some food and that he had fallen and hit the sink." Notwithstanding [Appellant's] position and statements, based on the evidence as presented by the Commonwealth, [d]efense [c]ounsel was able to effectively elicit evidence that could support a claim of self-defense. In fact, based on [d]efense [c]ounsel's efforts, a self-defense

> instruction was provided by the trial court as part of the final
> charge.

(*See id.* at 8).

The record supports the PCRA court's conclusions that Appellant underwent an extensive colloquy regarding his desire not to testify in his own defense, as well as his understanding of the rights he was giving up. (*See* N.T. Trial, 9/16/20, at 428-30). Consequently, Appellant fails to demonstrate how the result of the waiver proceeding would have been different absent counsel's alleged ineffectiveness. *See Washington, supra*; *Lawson, supra*. Further, the record also supports the PCRA court's conclusion that it was reasonable for trial counsel to avoid calling Appellant to testify regarding self-defense because it would contradict his earlier claims to prison staff that Mr. Santiago died from natural causes. (*See* N.T. Trial, 9/15/20, at 28, 54, 67, 84-85, 99-100, 106-107). Thus, Appellant's first claim of ineffectiveness fails.

In Appellant's second issue, he argues that counsel provided ineffective assistance because they did not forward medical documentation to Appellant's expert medical witness, Dr. Karl Williams, which placed Dr. Williams' credibility at risk during the trial. Dr. Williams testified that he believed Mr. Santiago died of natural causes related to his weight and a pre-existing condition but later admitted on cross-examination that he had not reviewed Mr. Santiago's medical records. Appellant admits that trial counsel "believes the records were provided to [Dr. Williams,]" but argues that from Dr. Williams' testimony, it was clear he did not review the records. (*See* Appellant's Brief at 26). Appellant suggests that it is "unclear" what records were actually forwarded

to Dr. Williams. Appellant asserts that it is evident that Dr. Williams did not have all the relevant facts before him prior to testifying. Appellant concludes that counsel had no reasonable basis for these actions, Appellant suffered prejudice as a result, and this Court must grant relief. We disagree.

Instantly, the PCRA court observed:

> Attorney Johnson provided testimony that "[defense counsel] received reports and records in discovery and that those were provided to Dr. Williams for his testimony." When asked if [d]efense [c]ounsel would have provided all documentation [to Dr. Williams], Attorney Johnson stated that "[p]rior to the production of his expert report. He needed to rely on those to make his expert report which we needed before trial."

> While Attorney Johnson could not recall specifics of Dr. Williams' or the forensic pathologist's report, he did recall that "the preexisting conditions were likely not a cause of death." Attorney Smith provided testimony that Dr. Williams wanted to "see everything we had" before he would agree to author a report. It is not a disputed fact that Dr. Williams did provide an expert report prior to the trial and that he testified during the trial. Attorney Johnson provided testimony that when looking for an expert to provide a report that would disagree with or dispute the "clear signs of asphyxiation" [d]efense [c]ounsel "couldn't find an expert to disagree with that." Attorney Smith stated that Dr. Williams' report "corroborated the theory we already had, which was that this could have been an accidental death." Defense [c]ounsel testified that they provided Dr. Williams the medical documentation they had.

(PCRA Court Opinion, 6/24/24, at 8-9) (internal citations to record omitted). The court also concluded that Appellant had failed to prove that he had been prejudiced by counsel's alleged errors:

> First, there was no evidence presented that there were other medical records that had not been provided. Additionally,

- 10 -

> as [d]efense [c]ounsel stated, it was difficult for them to find an expert that would dispute the signs of asphyxiation on the victim. Even if there were other records that could have been provided to Dr. Williams, it is not clear that the expert report he provided would be any different. Additionally, [Appellant's] claim that Dr. Williams' credibility was called into question is too speculative. Dr. Williams was able to provide a report and provide testimony that was in support of the defense strategy.

(PCRA Court Opinion, 6/24/24, at 10) (internal citations to record omitted).

The record supports the PCRA court's conclusions. Both trial counsel testified that they provided all necessary discovery they had received from the Commonwealth both to Appellant and to Dr. Williams, and there was no evidence introduced to the contrary beyond Appellant's own self-serving testimony. (*See* N.T. PCRA Hearing, 2/27/24, at 71-72, 76-78, 83-87, 89-90). The PCRA court credited the testimony from Appellant's counsel, as was within its purview, and we will not disturb this determination on appeal. *See Parker, supra*; *Mojica, supra*. Thus, this ineffectiveness claim merits no relief.

In his final issue, Appellant contends that trial counsel were ineffective for failing to provide Appellant with discovery. Appellant argues that the t-shirt believed to be the murder weapon could not have come from SCI-Pine Grove, because SCI-Pine Grove does not issue red t-shirts to inmates. According to Appellant, counsels' failure to request that the evidence envelope be opened resulted in his inability to introduce any evidentiary issues relative to the t-shirt's use in the commission of the crime to the jury. Appellant asserts counsel had no reasonable basis for failing to request a review of the

t-shirt, that he suffered prejudice as a result, and that this Court must grant relief. We disagree.

Instantly, the PCRA court observed:

> Defense [c]ounsel provided testimony at the PCRA hearing that they provided discovery to [Appellant], including all the discovery materials that were available to them. Defense [c]ounsel stated that "a hard copy would have been mailed" to the SCI facility for [Appellant] and they also would have had a conversation with [Appellant] regarding the discovery materials. The [c]ourt also finds that photographs of the disputed T-shirt were shown to the jury and admitted without objection at trial. The T-shirt was placed into an evidence envelope and admitted into evidence as Exhibit #84. The T-shirt was admitted into evidence without objection. However, the [c]ourt notes that prior to the admission of the T-shirt, [d]efense [c]ounsel did question the [t]rooper concerning how and where that t-shirt had been kept in evidence. [Appellant] alleges [d]efense [c]ounsel [were] ineffective for not requiring the evidence envelope be opened at trial as he alleges a discrepancy in the item being listed as a red t-shirt.
>
> …. [T]his [c]ourt finds that not showing or giving importance to the T-shirt was in line with the defense strategy as they were also able to highlight the fact that no DNA was collected from the t-shirt. "We were trying to say that the shirt was not necessarily a weapon in the case. That was kind of our goal." This [c]ourt finds that [Appellant] has failed to prove ineffective assistance of counsel as to this argument.

(PCRA Court Opinion, 6/24/24, at 10-11) (internal citations to record omitted).[3]

---

[3] The PCRA court also suggests that this claim is waived because Appellant did not object to the failure to open the envelope at trial, in his post-sentence motion, Pa.R.A.P. 1925(b) statement, or on direct appeal. (**See** PCRA Court
*(Footnote Continued Next Page)*

The record supports the court's conclusions. (**See** N.T. Trial 9/15/20, at 105, 145-48, 157-58; 9/16/20, at 259-60, 367-68, 43). Appellant's arguments regarding the t-shirt are speculative at best, particularly where, as the court correctly observes, trial counsel had the reasonable strategy of attempting to argue that the t-shirt was not a weapon and did not have any DNA collected from it. **See King, supra**; **Kelley, supra**. Thus, Appellant's final issue merits no relief. Accordingly, we affirm the order denying PCRA relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/25/2025

---

Opinion, 6/24/24, at 10-11). We decline to find waiver in this instance, as Appellant is alleging the ineffective assistance of counsel in connection with the admission of the t-shirt.

- 13 -