J-S21027-21
J-S21028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT JUNIOUS | : | |
| | : | |
| Appellant | : | No. 468 EDA 2020 |

Appeal from the PCRA Order Entered January 10, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000504-2012,
CP-51-CR-0000533-2012

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ROBERT JUNIOUS | : | |
| | : | |
| Appellant | : | No. 469 EDA 2020 |

Appeal from the PCRA Order Entered January 10, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000504-2012,
CP-51-CR-0000533-2012

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.*

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 20, 2021**

Appellant, Robert Junious, appeals from the orders entered on January 10, 2020, which denied him relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

---

* Retired Senior Judge assigned to the Superior Court.

The trial court ably summarized the underlying facts of this case:

In 2011, two sexual assaults were reported to Philadelphia Police. On August 24, 2011, [D.G.] reported the assault to police. Early [] that morning, [D.G. was working as a prostitute and Appellant approached her] behind a Church's Chicken restaurant. . . . [D.G.] entered Appellant's vehicle and Appellant drove her to a secluded residential location in Torresdale. During the drive, Appellant asked [D.G.] to perform oral sex on him multiple times. Each time, [D.G.] responded that she would not perform any sexual acts on Appellant until he paid her. After arriving at the secluded location and unsuccessfully requesting oral sex, Appellant leaned towards [D.G.] and pulled her seat-recliner lever. As Appellant pulled the lever, he also leaned his body against [D.G.] to force her seat to recline. Appellant put his forearm on [D.G.'s] collarbone and attempted to remove her pants. Appellant attempted to remove her pants by pulling the back of her pants from between her legs, grabbing underneath her [buttocks]. In response to Appellant's actions, [D.G.] leaned back with her knees up to her chest in an attempt to protect herself. Appellant then climbed on top of her. [D.G.] tried to move but she could not. As she tried to move Appellant told her to "stop fighting it."

During the struggle, Appellant punched [D.G.] hard in her face. After punching [D.G.], Appellant apologized for his actions. [D.G.] did not notice if Appellant's penis came out of his pants, however, she felt it during the altercation. [D.G.] then noticed that Appellant had ejaculated on her clothing during the altercation. At no point did [D.G.] consent to Appellant climbing on top of her or ejaculating on her. [D.G.] demanded that Appellant drive her towards her home. After driving a short distance to the area [D.G.] requested, Appellant stopped at a street corner and demanded that [D.G.] exit the vehicle. [D.G.] exited, wrote down Appellant's license plate number and called the police as Appellant drove away. As she began walking, she noticed and approached a police car parked on the 4900 block of Torresdale Avenue. [D.G.] then gave [the officer] the license plate number of Appellant's vehicle. Police then took [D.G.] to the Special Victims Unit.

In the early hours of October 4, 2011, Appellant approached [E.M., who was also working as a prostitute,] at the intersection of Kensington Avenue and Tioga Street[, in Philadelphia]. After Appellant indicated that he was interested in obtaining [E.M.'s] services, [E.M.] entered Appellant's vehicle. Once [E.M.] entered the vehicle, she directed Appellant to drive to a secluded location near the intersection [of] Emerald Street and Castor Avenue.

After parking at the secluded location, [E.M.] and Appellant negotiated a price for her services. After agreeing on a price, [E.M.] began to place a condom on Appellant's penis and asked Appellant to pay her the money. As [E.M.] did this, Appellant pulled out a gun and pointed it at her face. As Appellant pointed the gun at [E.M.], he ordered her to perform oral sex on him. After [E.M.] complied with Appellant's demands, Appellant placed the gun on [E.M.'s] temple and ordered her to turn around. Appellant then proceeded to penetrate [E.M.'s] vagina with his penis.

After Appellant finished, [E.M.] pushed Appellant off of her and ran out of the car. While running away from Appellant, [E.M.] approached . . . an on-duty police officer. [E.M.] distraughtly told [the officer] that she had just been raped and provided [the officer with] the license plate number of Appellant's vehicle. [The officer] then took [E.M.] to the Special Victims Unit.

Trial Court Opinion, 4/13/17, at 3-5 (citations and footnotes omitted).

Following a bench trial, Appellant was found guilty of attempted rape, attempted sexual assault, indecent assault, simple assault, and false imprisonment at docket number CP-51-CR-0000504-2012 (hereinafter "Docket Number 504-2012") (relating to D.G.)[1] and rape, sexual assault, involuntary deviate sexual intercourse, indecent assault, simple assault, and

_____

[1] 18 Pa.C.S.A. §§ 901(a), 901(a), 3126(a)(2), 2701(a), and 2903(a), respectively.

- 3 -

false imprisonment at docket number CP-51-CR-0000533-2012 (hereinafter "Docket Number 533-2012") (relating to E.M.).[2] On February 26, 2016, the trial court sentenced Appellant to serve an aggregate term of eight to 17 years in prison, followed by two years of probation, for his convictions. N.T. Sentencing, 2/26/16, at 15-16. We affirmed Appellant's judgment of sentence on July 3, 2018 and, on November 7, 2018, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Junious***, 194 A.3d 643 (Pa. Super. 2018) (unpublished memorandum) at 1-2, *appeal denied*, 196 A.3d 1020 (Pa. 2018).

On November 27, 2018, Appellant filed timely, *pro se* PCRA petitions at the two docket numbers. Following the appointment of counsel, counsel filed amended petitions on Appellant's behalf. Within the amended petitions, Appellant claimed that trial counsel was ineffective for advising that he not testify at trial. According to Appellant, counsel's advice was "not reasonable because in light of the evidence presented at trial only [Appellant's] testimony could have established his innocence." Amended PCRA Petition, 5/8/19, at ¶ 30.

The PCRA court held a hearing on Appellant's ineffective assistance of counsel claim. During the hearing, Appellant and Appellant's trial counsel, Jeffrey Azzarano, Esquire (hereinafter "Trial Counsel"), testified. Appellant

---

[2] 18 Pa.C.S.A. §§ 3121(a)(1), 3124.1, 3123(a)(1), 3126(a)(2), 2701(a), and 2903(a), respectively.

testified that, at trial, he told Trial Counsel "what actually happened" with each of the victims. N.T. PCRA Hearing, 10/10/20, at 8. With respect to E.M., Appellant testified that he told Trial Counsel:

> I picked [E.M.] up [in] the back streets of the Frankford area and I promised her money for oral sex. She got in the car and she told me she was going to do it as long as I paid her the money. . . . [S]he told me her price and I told her my price. She got in the car. She began to have oral sex with me and then she stopped and said, "Where's my money?" I said, "I'm gonna pay you. Just keep continuing, keep continuing." And she said, "No," and she started to get out [of the car].

*Id.*

Appellant testified that he "pulled [E.M.] back" and "told her to finish." *Id.* at 9-10. According to Appellant: "[E.M.] said . . . 'I'll finish if you give me my money,' and I told her, 'I'll give you the money when you done.'" *Id.* at 10. Appellant testified that E.M. then simply "got out [of] the car" and left. *Id.*

As to D.G., Appellant testified that he told Trial Counsel that the following occurred:

> [After picking up D.G.,] she said, "I want $100." I said, "I don't have $100." I said, "I got $50." At this time, she's taking off her clothes believing I have $100, but I didn't have $100. I told her that and I guess she was assuming I was going to get the rest of it, but I told her no and then as she's taking off her clothes, I got on top of her and we started having sex. And then, like, right before, uh, I was about to come in her, she said, um, "Where the rest of my money at? Take me to the MAC machine and get the rest of my money or I'm calling the cops on you." I said, "You can call them all you want." I said, "I paid you your money. I paid you what you asked for." I didn't have $100, so we was back and forth,

back and forth, and that's when she got up and jumped out the car and ran back around the corner.

*Id.* at 11-12.

Appellant testified that he told Trial Counsel his version of what occurred, but Trial Counsel told him "Let me handle this. I been dealing with your family so long. Let me take care of this." *Id.* at 12. Further, Appellant acknowledged that the trial court provided him with a colloquy on his right to testify on his own behalf – and, following the colloquy, Appellant informed the trial court that he did not wish to testify on his own behalf. However, during the PCRA hearing, Appellant testified that he responded to the trial court in this manner because Trial Counsel told him "don't say nothing." *Id.* at 14.

During the PCRA hearing, Trial Counsel testified that, as far as he recalled, he "did not believe it would [have been] necessarily advantageous for [Appellant] to testify [at trial] based on probably several factors." *Id.* at 33. He testified:

> Some of the factors – and I'm not saying this is limiting it to these factors – probably would have been the – the evidence in the case, which I believe consisted of physical evidence on the victims in the case, but also DNA, scientific evidence in the case. It would have also probably been, based on my discussions with him prior to trial and up to and including probably before testifying, his demeanor, the way he would necessarily come across to the judge or the fact finder in a particular case. So I'm sure there were several factors that went into my discussions with [Appellant] about the pros and cons about taking the stand in this case.

*Id.*

- 6 -

Trial Counsel also stated his concern that, if Appellant testified at trial, Appellant might "open the door" to his prior crimes of violence. Trial Counsel testified:

> Based on my recollection, there would have been discussions about potentially opening the door to prior instances of alleged crimes of violence in this case that if he were to testify and if he were to testify in a certain way – because part of the discussion would have been that you don't just get to get up there and tell your side of the story and it's on check. You're going to have a district attorney there who handles these cases all the time and she's going to get to ask you questions about the information you provide on that stand to [the fact finder]. So depending on what he said on direct or possibly on cross, he may have himself unintentionally opened the door to information that we were legally allowed to keep out of the case. That would have been part of the discussion.

*Id.* at 34.

Finally, as to Appellant's claim that, during the waiver colloquy, Trial Counsel told Appellant "don't say nothing," Trial Counsel testified:

> I would never direct a defendant what to say. That's number one. However, what I would say, though, was I would have had a discussion with [Appellant] about the pros and cons of testifying and what I personally thought he should or should not do, but ultimately, it's up to the client or the defendant who I'm representing to take the stand or not take [the] stand. If they're – if they could choose not to follow my advice – and they would be perfectly within their right to not follow my advice, but my practice – and I'm sure what I talked to [Appellant] about was what I thought would happen if he took the stand versus if he didn't take the stand. That would have been the discussion I had with him, but I wouldn't direct – I wouldn't direct him what to say under any circumstances.

*Id.* at 36.

The PCRA court denied Appellant post-conviction collateral relief and Appellant filed timely notices of appeal at both docket numbers. *See* Notice of Appeal at Docket Number 504-2012, 1/14/20, at 1; Notice of Appeal at Docket Number 533-2012, 1/14/20, at 1. Appellant raises identical claims in his briefs to this Court:[3]

> The PCRA court committed an error of law and fact and made an unreasonable determination in violation of [Appellant's] . . . constitutional right[] to effective assistance of counsel when it ruled that Trial Counsel's advice for [Appellant] not to testify at trial [] was reasonable and that even if [Appellant] would have testified at his [trial] that the outcome of the trial would not have been different or would not have been in his favor and that [Appellant] did not show prejudice.

Appellant's Brief at 6 (some capitalization omitted).

"Under the applicable standard of review, we must determine whether the ruling of the PCRA court is supported by the record and is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court." *Commonwealth v. Spotz*, 18 A.3d 244, 259 (Pa. 2011) (citations omitted). "However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." *Id.*

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated

---

[3] Since Appellant raises identical arguments in his briefs to this Court, we will refer to Appellant's briefs in the singular.

circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. *See Commonwealth v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a

- 9 -

hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

Within his brief, Appellant argues:

Here, [Appellant] contends that he wanted to testify at his trial in his defense but was unduly impressed and influenced by [Trial Counsel] not to testify. That decision made the trial unfair. [Appellant] had valid evidence but it wasn't presented. He claims that his version of events was in [line] with the physical and medical evidence but without his testimony the court had no choice but to find him guilty if there was no explanation regarding consent. Despite the colloquy by the court to [Appellant] about testifying on his behalf, [Appellant] alleges that after suggestions by and after the advice of [Trial Counsel] he was unduly influenced and thus failed to testify. In this case that [advice] was not reasonable because in light of the evidence presented at trial [only Appellant's] testimony could have established his innocence. Because of this, in this case the advice of counsel not to testify was so unreasonable that it vitiated [Appellant's] knowing and intelligent decision not to testify at trial.

Appellant's Brief at 15 (some capitalization omitted).

As our Supreme Court has held:

The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate

either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

. . .

The right of an accused to testify on his own behalf is a fundamental tenet of American jurisprudence and is explicitly guaranteed by Article I, Section 9 of the Pennsylvania Constitution. The decision to forgo such a significant right . . . can not be based on mistaken guidance.

***Commonwealth v. Nieves***, 746 A.2d 1102, 1104-1105 (Pa. 2000) (citations omitted).

The PCRA court explained its decision to deny Appellant post-conviction relief:

[The PCRA court] found credible [Trial Counsel's] testimony at the [PCRA] hearing that he would have discussed [the decision of whether Appellant should testify,] weighing the respective pros and cons. Thus, [Appellant] cannot show that [Trial Counsel] in any way interfered with his right to testify.

Further, [Trial Counsel's] decision to advise [Appellant] not to testify was a reasonable strategic decision in light of [Appellant's] demeanor, the potential opening of the door to other incidents of violent conduct, the fact that [Appellant's] version of [the] events did not provide a viable explanation for the victims' injuries, and the fact that the testimony would have partially corroborated the testimony of the victims. Since a reasonable basis for this advice existed[, Appellant's] claim fails.

PCRA Court Opinion, 10/29/20, at 8-9 (citations omitted).

On appeal, Appellant essentially claims that Trial Counsel "gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." ***See Nieves***, 746 A.2d at 1104-1105. However, in his brief, Appellant does not argue that the PCRA court erred in determining

that Trial Counsel's advice was reasonable, given Appellant's demeanor, the potential for "opening the door to other incidents of violent conduct," "the fact that [Appellant's] version of [the] events did not provide a viable explanation for the victims' injuries," and "the fact that the testimony would have partially corroborated the testimony of the victims." **See** PCRA Court Opinion, 10/29/20, at 9; Appellant's Brief at 1-17. As a result, Appellant's claim on appeal necessarily fails. **Rabatin v. Allied Glove Corp.**, 24 A.3d 388, 396 (Pa. Super. 2011) (holding that the Superior Court "may not act as counsel for an appellant and develop arguments on his behalf"); **Stewart**, 84 A.3d at 707 ("[a] failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim").

Orders affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/2021

- 12 -